UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al., | Case No.  15-cv-01215-JSW   (JCS) |
| Plaintiffs, | **REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT** |
| v. | Re: Dkt. No. 19 |
| TEAR-N-IT UP DEMOLITION, INC., et al., | |
| Defendants. | |

## I.      INTRODUCTION

In this ERISA enforcement action, Plaintiffs bring a Motion for Default Judgment ("Motion") against Defendants Tear-N-It Up Demolition, Inc. ("TUD") and Guadalupe Manuel Cervantes.[1]  They seek an entry of judgment awarding unpaid employee benefit contributions, liquidated damages, interest, attorneys' fees, and costs.  They also request an order compelling TUD to submit to an audit of its records.  The Motion was referred to the undersigned for a report and recommendation.  A hearing on the Motion was held on September 4, 2015 at 9:30 a.m.

For the reasons stated below, the Court RECOMMENDS that the District Court GRANT the Motion.

## II.      BACKGROUND

### A.      Facts

The Complaint lists the following trust funds ("Trust Funds") as Plaintiffs:  (1) Laborers Health and Welfare Trust Fund for Northern California; (2) Laborers Vacation-Holiday Trust Fund for Northern California; (3) Laborers Pension Trust Fund for Northern California; and (4)

---

[1] Defendant Cervantes has since been dismissed.  To the extent that the Motion seeks a judgment against Cervantes, it is recommended that it be DENIED as moot.

United States District Court
Northern District of California

Laborers Training and Retraining Trust Fund for Northern California.  Compl. ¶ 3.  The Trust

Funds are employee benefit plans within the meaning of Sections 3(3) and 3(7) of ERISA, 29

U.S.C. §§ 1002(3), (37).  *Id.*

On April 1, 2007, TUD entered into a Memorandum of Agreement with the Northern

California District Council of Laborers, agreeing to be bound by the Northern California Laborers

Master Agreement ("Master Agreement") and the agreements that govern each of the Trust Funds

("Trust Agreements").  *Id.* ¶ 9; Declaration of Michelle Lauziere in Support of Motion for Default

Judgment ("Lauziere Decl.") Ex. D (2007 Memorandum of Agreement).  TUD later renewed this

agreement on March 4, 2014.  Compl. ¶ 7; Lauziere Decl. Ex. E (2014 Memorandum of

Agreement).

The Trust Agreements specify that the Trust Funds "consist[] of all Contributions required

. . . to be made for the establishment and maintenance of the [trust fund], including all interest,

income and other returns of any kind."[2]  Lauziere Decl. Ex. B (Recitals of the Amended and

Restated Trust Agreement Establishing the Laborers Pension Trust Fund for Northern California,

dated September 2008 ("Pension Trust Agreement")), Art. II § 1.  Under the Trust Agreements,

employers are required to make monthly contributions to the Trust Funds for hours worked by

union employees for the employer during each given month.  *Id.* Ex. A (Article II of the Pension

Trust Agreement) ¶¶ 1, 2.  These payments must be made no later than the twenty-fifth day of the

following month.  *Id.* Ex. B, Art. II § 10.  If payments are not made by that date, they become

delinquent.  *Id.*

The Master Agreement specifies that delinquent contributions accrue simple interest at a

rate of 1.5% per month.  Lauziere Decl. Ex. F (Section 28 of the Laborers' Master Agreement) §

28A.  It sets forth the rate schedule for contributions employers are required to make to each of the

various Trust Funds.  *Id.*  Along with the Trust Fund Liquidated Damages Policy, the Master

Agreement also provides for liquidated damages for delinquent contributions at a flat rate of $150

---

[2] Plaintiffs have only supplied exhibits for the Pension Trust Fund for Northern California,
although they represent that the Trust Agreements for all four of the Trust Funds contain identical
terms and conditions.  Lauziere Decl. ¶ 4 & Exs. A, B, and C (Article IV, Sections 3 to 14 of the
Pension Trust Agreement).  Therefore, the references to the Pension Trust Fund for Northern
California apply to all the Trust Funds.

per month:

> Subject to accounting verification, liquidated damages shall be assessed on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions.

*Id.*; *see also* Lauziere Decl. Ex. G (copy of the Trust Funds' Liquidated Damages Program—Board Policy).

Finally, the Trust Agreements require employers to submit to an audit of its books and records to allow the Trust Funds to conduct a proper accounting of contributions due:

> Upon receipt of a written request from the Board, an Individual Employer agrees to permit an auditor designated by the Board to enter upon the premises . . . to examine and copy books, records, papers or reports . . . to determine whether that Individual Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund.

Lauziere Decl. Ex. C § 7.

### B.   Plaintiffs' Complaint

On March 13, 2015, Plaintiffs filed the Complaint in the Northern District of California containing three counts against TUD.  Plaintiffs generally allege that TUD failed to pay contributions for the following periods:  March 2014 through April 2014, and December 2014 through January 2015.  They also allege that Defendant paid late contributions for the following periods:  March 2011 through August 2012; November 2013 through December 2013; January 2014 through February 2014; and during the month of September 2014.

Specifically, as to Count One, Plaintiffs assert a breach of contract cause of action against TUD for its failure to pay contributions and failure to pay contributions on time.  Compl. ¶¶ 8–15.  In Count Two, Plaintiffs assert a statutory cause of action against TUD, alleging that its failure to pay contributions and pay contributions on time violated ERISA.  *Id.* ¶¶ 16–20.  Lastly, in Count Four, Plaintiffs allege that TUD's violations entitle Plaintiffs to an order requiring it to submit to an audit of its books and records.[3]  *Id.* ¶¶ 27–30.

---

[3] Count Three stated a claim against Cervantes only, who has since been dismissed.

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.     Service and Entry of Default

On March 28, 2015, Plaintiffs served the Complaint on TUD by personally delivering copies of the Complaint to Cervantes as an agent for service of process for TUD.  Dkt. 10 (certificate of service of the summons and complaint on TUD).  TUD failed to answer the Complaint or otherwise appear.  The Clerk filed an entry of default against TUD on May 1, 2015. Dkt. 15 (Clerk's notice of entry of default).

### D.     Motion for Default Judgment

On July 7, 2015, Plaintiffs filed a Motion for Default Judgment.  Dkt. 19 (Motion for Default Judgment).  They request an entry of default judgment against TUD and an award of the following relief:  (1) $40,483.44 for unpaid contributions, interest on those unpaid contributions, and liquidated damages; (2) $8,493.44 for contributions paid, but paid late, and interest on those late contributions; (3) $8,543.00 for attorneys' fees and costs; and (4) an order requiring TUD to submit to an audit of its business records beginning from March 2011 to the present, requiring TUD to pay any amounts found to be due and owing, and requesting the Court to retain jurisdiction over this action to enforce the award.  *Id.* at 11–13.

## III.    DISCUSSION

### A.     Legal Standards

Rule 55(b)(2) of the Federal Rules of Civil Procedure permits a court to enter default judgment once the Clerk, under Rule 55(a), has entered the party's default based upon a failure to plead or otherwise defend the action.  *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001).  Whether to enter a judgment lies within the court's discretion.  *Id.*; *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment.").

Before reaching the merits of a motion for default judgment, however, the court must first confirm that it has subject matter jurisdiction over the case, personal jurisdiction over the parties, and that service of process on the defendant was adequate.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, it considers several factors in determining whether to grant default

4

1  judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  In making this decision, the court takes as true all factual allegations in the complaint, except those relating to damages.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence.  *Id.*

### B.   Jurisdiction

The undersigned finds that the District Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. §§ 185(c) (granting labor union organizations the power to sue employers in federal court) and 1132(e)(1) (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms).  The undersigned also finds that the District Court has personal jurisdiction over TUD because TUD is a California corporation with its principal place of business in Castro Valley, California.  Compl. ¶ 7; Lauziere Decl. Ex. E.

### C.   Service of Process

The undersigned finds that service of process was adequate.  A party may serve a corporation "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1); *see also* Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual").  Under California law, "[a] summons may be served by personal delivery of a copy of the summons and complaint to the person to be served."  Cal. Code Civ. Proc. § 415.10.  A summons can be served on a corporation by delivering a copy of the summons and complaint to the person designated as agent for service of process.  Cal. Code Civ. Proc. § 416.10(a).  The undersigned has reviewed the proofs of service

United States District Court
Northern District of California

1    and finds that Plaintiffs properly served the summons and complaint on TUD by personal service.

2    Dkt. 10 (certificate of service of summons and complaint on TUD).

3         In addition, the record supports the conclusion that TUD is not otherwise exempt from

4    default judgment.  "A default judgment may be entered against an infant or incompetent person

5    only if represented by a general guardian, committee, conservator, or other like fiduciary who has

6    appeared."  Fed. R. Civ. P. 55(b)(2).  TUD is a corporation and therefore is not an infant,

7    incompetent person, soldier or sailor.  *F.T.C. v. J.K. Publ'ns, Inc.*, No. 99-00044 ABC, 2000 U.S.

8    Dist. LEXIS 23397, at *1 (C.D. Cal. Aug. 31, 2000) ("Defendants are not corporations and are

9    therefore not infants or incompetent persons.").

10        Accordingly, the undersigned finds that TUD was properly served and is not otherwise

11   exempt from default judgment.

12        **D.    *Eitel* Factors**

13        The remaining claims in the Complaint against TUD are the following:  (1) a breach of

14   contract cause of action in Count One; (2) an ERISA cause of action in Count Two; and (3) a

15   claim for equitable relief in Count Four.   As to these claims, the undersigned finds that the *Eitel*

16   factors outweigh the "strong policy underlying the Federal Rules of Civil Procedure favoring

17   decision on the merits" for the reasons discussed below.  *Eitel*, 782 F.2d at 1471–72.

18        First, Plaintiffs will suffer prejudice if the Court does not enter a default judgment against

19   TUD because Plaintiffs have no means to otherwise recover the contributions owed to them.  *Bd.*

20   *of Trs. v. Accu-Balance Assocs., Inc.*, No. C-05-3470 EMC, 2006 U.S. Dist. LEXIS 101206, at *5

21   (N.D. Cal. Nov. 16, 2006) (explaining in an ERISA enforcement action that "if the motion for

22   default judgment were to be denied, then the Trust Funds would likely be without a remedy");

23   *PepsiCo*, 238 F. Supp. 2d at 1177 (finding that the plaintiff would be prejudiced if default

24   judgment were not entered).

25        With respect to the second and third *Eitel* factors, Plaintiffs have sufficiently pled facts

26   entitling them to relief for the claims sought.  For their breach of contract claim in Count One,

27   Plaintiffs have offered evidence that TUD entered into a binding contract in the form of the

28   Memorandum of Agreement, which required it to perform in accordance with the terms set forth in

6

United States District Court
Northern District of California

the Master Agreement and the Trust Agreements.  Lauziere Decl. ¶¶ 7–14.  These agreements impose liability on employers for delinquent contributions that were either not paid, or were paid late.  *Id.* Exs. B, E.  In the event the employer is delinquent on its contributions, Plaintiffs are entitled to recover the unpaid contributions, liquidated damages, interest, and attorneys' fees and costs.  *Id.* Ex. E.  Plaintiffs are also permitted to audit the employer's records.  *Id.* Ex. C, Art. IV § 7.  Similarly, for their ERISA claim in Count Two, Plaintiffs have offered evidence that they are entitled to relief under 29 U.S.C. § 1145.[4]  As further discussed below, ERISA permits Plaintiffs to recover the unpaid contributions, interest, liquidated damages, attorneys' fees and costs, and "other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2).  Finally, as to Plaintiffs' claim in Count Four, both the contract and ERISA permit Plaintiffs to seek a request to audit of TUD's books and records.  Accordingly, the undersigned finds that Plaintiffs have submitted a legally sufficient complaint on the merits.  *See Bd. of Trs. v. Piedmont Lumber & Mill Co., Inc.*, No. 10-1757 MEJ, 2010 U.S. Dist. LEXIS 125818, at *9–11 (N.D. Cal. Nov. 29, 2010).

Fourth, *Eitel* requires the Court to consider the entry of default judgment with respect to the sum of money at stake in the action.  "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged."  *Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-2532 LB, 2012 U.S. Dist. LEXIS 14139, at *10 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472).  However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate."  *Id.* (citing *Bd. of Trs. v. Superhall Mech. Inc.*, No. C-10-2212 EMC, 2011 U.S. Dist. LEXIS 70532, at *7 (N.D. Cal. June 30, 2011)).  Here, the sum of actual and statutory damages, interest, attorneys' fees, and costs that Plaintiff seeks against TUD is $57,519.88.  The undersigned finds this amount weighs in favor of default judgment

---

[4] 29 U.S.C. § 1145 reads in full:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

United States District Court
Northern District of California

1  because it is supported by the evidence, tailored to TUD's alleged misconduct, and properly

2  calculated, as discussed below.  *See, e.g.*, *Bd. of Trs. v. Valley Concrete Constr.*, No. C-14-03519

3  DMR, 2015 U.S. Dist. LEXIS 58976, at *12 (N.D. Cal. Apr. 7, 2015) (finding in an ERISA

4  enforcement action that a claim for $131,905.49 was reasonable because it was tailored to the

5  defendant's misconduct); *Bd. of Trs. v. Torres*, No. C-12-02633 DMR, 2014 U.S. Dist. LEXIS

6  156588, at *10–11 (N.D. Cal. Nov. 4, 2014) (finding similarly in an ERISA enforcement action

7  seeking $104,084.55 in damages).

8    Fifth, because TUD has failed to respond to this action, there is an absence of material facts

9  in dispute in the record from which the undersigned may weigh this factor.  It is therefore neutral.

10  *See Bd. of Trs. v. Perez*, No. CV 10-02002 JSW (JCS), 2011 U.S. Dist. LEXIS 142570, at *21

11  (N.D. Cal. Nov. 7, 2011).

12    Sixth, TUD has not appeared, and there is no indication in the record that it defaulted due to

13  excusable neglect.  Rather, TUD was properly served with the Complaint, the notice of entry of

14  default, as well as the papers in support of this motion.  Therefore, the undersigned finds that this

15  factor weighs in favor of default judgment also.  *See Shanghai Automation*, 194 F. Supp. 2d at

16  1005 (finding that the defendant's failure to appear and lack of excusable neglect weighed in favor

17  of granting default judgment).

18    Considering these factors together, the undersigned finds that the first six *Eitel* factors in

19  Plaintiffs' claims against TUD outweigh the policy underlying the last *Eitel* factor that, "whenever

20  reasonably possible, cases should be decided on their merits."  *Perez*, 2011 U.S. Dist. LEXIS

21  142570 at *22.  Accordingly, the undersigned concludes that liability is established and

22  recommends that default judgment should be entered as to Plaintiffs' claims against TUD.

23    **E. Damages**

24    Once liability is established through a defendant's default, a plaintiff is required to

25  establish that the requested relief is appropriate.  *Geddes*, 559 F.2d at 560 (citing *Pope v. United*

26  *States*, 323 U.S. 1, 12 (1944)).

27     **1. Unpaid Contributions, Interest, and Liquidated Damages**

28    When an employee benefit plan obtains judgment in its favor, ERISA requires the court to

United States District Court
Northern District of California

award the following to the benefit plan:  (1) unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of the interest on the unpaid contributions, or liquidated damages as specified in the plan (generally not to exceed twenty percent of the unpaid contributions); (4) reasonable attorneys' fees and costs; and (5) other legal or equitable relief that the court deems appropriate.  *See* 29 U.S.C. § 1132(g)(2).  Interest on unpaid contributions under § 1132(g)(2) "shall be determined by using the rate provided under the plan," if stated.  *Id.*  However, "[t]o be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied:  (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Nw. Adm'rs, Inc. v. Albertso's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).

Here, Plaintiffs are entitled to a mandatory award under § 1132(g)(2) for the periods March 2014 through April 2014, and December 2014 through January 2015.  TUD was delinquent at the time the action was filed, and the Master Agreement and Trust Agreements provide for the relief sought.  *See* Lauziere Decl. Ex. C, Art. IV § 7; *id.* Ex. F § 28A.

Plaintiffs seek $31,760.76 for unpaid contributions during the periods March 2014 through April 2014, and December 2014 through January 2015.  Mot. at 11–12.  In support, they submit an exhibit summarizing the contribution reports from TUD for the months owed.  Lauziere Decl. Ex. H (summary of unpaid contributions per month by trust fund).  The summary indicates that the total sum of $31,760.76 in unpaid contributions consists of $4,355.28 for the Vacation-Holiday Trust Fund, $14,837.76 for the Pension Trust Fund, $10,772.47 for the Health and Welfare Trust Fund, $655.22 for the Apprentice and Training Trust Fund, and $1,140.03 for the Annuity Trust Fund.[5]  *Id.*

Next, Plaintiffs seek $4,361.34 for interest on those unpaid contributions.  Mot. at 11–12.  In support, they submit an exhibit summarizing the accrued interest on the unpaid contributions for each of the Trust Funds during the months March 2014 through April 2014, and December 2014 through January 2015, and calculated at the rate of 1.5% through May 22, 2015.  Lauziere

---

[5] Article IV, Section 13 of the Pension Trust Agreement establishes the Annuity Trust Fund.  *Id.* Ex. C, Art. IV § 13(A).  Trustees of the Pension Trust Fund retain exclusive authority to control and manage the Annuity Trust Fund.  *Id.* Ex. C, Art. IV § 13(C).

United States District Court
Northern District of California

Decl. Ex. I (summary of accrued interest per month on unpaid contributions by trust fund);

Lauziere Decl. Ex. F § 28A (specifying in the Master Agreement the interest rate and method of

calculation); *see also* 29 U.S.C. § 1132(g)(2) (allowing interest at the rate specified in the plan).

The summary indicates that $597.67 in interest was owed to the Vacation-Holiday Trust Fund,

$2,035.27 to the Pension Trust Fund, $1,508.07 to the Health and Welfare Trust Fund, $89.49 to

the Apprentice and Training Trust Fund, and $130.84 to the Annuity Trust Fund.

Finally, Section 1132(g)(2)(C) also allows Plaintiffs to recover "an amount equal to the

greater of—interest on the unpaid contributions, or liquidated damages provided for under the plan

in an amount not in excess of 20 percent" of $31,760.76. *See* 29 U.S.C. § 1132(g)(2)(C); *see also*

*Bd. of Trs. v. Contractors Chem., Inc.*, No. 14-cv-04159-JD, 2015 U.S. Dist. LEXIS 103405, at

*7–8 (N.D. Cal. Aug. 6, 2015) (explaining that under ERISA, benefit funds could recover §

1132(g)(2)(C) damages, in addition to interest under § 1132(g)(2)(B)).  The Master Agreement

sets forth liquidated damages at a rate of $150 per month.  Lauziere Decl. Ex. F § 28A (listing the

liquidated damages rate); *id.* Ex. G (detailing the Trust Funds' liquidated damages policy).

Plaintiffs submitted evidence that TUD was therefore liable for $600 in liquidated damages for the

four months during the periods March 2014 through April 2014, and December 2014 through

January 2015.  *Id.* Ex. I (summarizing liquidated damages per month by trust fund).  However, as

discussed above, interest on unpaid contributions for those months totaled $4,361.34.  *Id.*

Accordingly, under §1132(g)(2)(C), the undersigned recommends that Plaintiffs' request for

$4,361.34 be granted.  *See Contractors Chem.*, 2015 U.S. Dist. LEXIS 103405 at *7 (explaining

that the plaintiffs could have been entitled to "double interest" under § 1132(g)(2)(C) because the

amount of interest on unpaid contributions exceeded the amount of liquidated damages); *Valley*

*Concrete Constr.*, 2015 U.S. Dist. LEXIS 58976 at *18 ("Given that the interest is greater than the

liquidated damages, [under § 1132(g)(2)(C),] Plaintiffs are entitled to an additional award of

interest . . . .").

The undersigned finds the evidence provided sufficiently supports Plaintiffs' claim and

recommends the District Court grant their request for $31,760.76 in unpaid contributions,

$4,361.34 in interest, and an additional $4,361.34 in statutory damages under § 1132(g)(2)(C), for

a total of $40,483.44.

**2.  Interest and Liquidated Damages for Contributions Paid, but Paid Late**

Next, Plaintiffs seek interest and liquidated damages for contributions paid, but paid late. 29 U.S.C. § 1132(g)(2) does not apply to this request because the request is not for contributions that were unpaid at the time of this suit.  *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215–17 (9th Cir. 1989) ("Because no contributions were 'unpaid' at the time of this suit, § 1132(g)(2) does not apply."); *see also Bd. of Trs. v. Shade Const. & Eng'g*, No. C 06-6830 PJH (EMC), 2007 U.S. Dist. LEXIS 103726, at *18 (N.D. Cal. Oct. 19, 2007) ("Plaintiffs are not entitled to a statutory award of interest or liquidated damages [on contributions paid but paid late] because remedies under 29 U.S.C. § 1132(g)(2) only apply to unpaid contributions.").

The Master Agreement provides that TUD is liable for liquidated damages in the amount of $150 for each month a contribution remains delinquent.  Lauziere Decl. Ex. F § 28A.  This Court has found, under similar facts, that a provision providing for liquidated damages at a flat rate of $150 per month in which the employer remained delinquent on contributions was enforceable as a matter of federal common law.  *See Bd. of Trs. v. KMA Concrete Constr. Co.*, No. SACV 09-1163 RNB, 2011 U.S. Dist. LEXIS 100747, at *21–22 (N.D. Cal. Dec. 20, 2011).  For the reasons stated in *KMA*, the undersigned finds that the liquidated damages provision in the Master Agreement is enforceable.

Having found that Plaintiffs may recover liquidated damages for the months listed in the Complaint, the Court must determine the amount of liquidated damages to which Plaintiffs are entitled.  Plaintiffs seek liquidated damages for late contributions for the following time periods: (1) March 2011 through August 2012; (2) November 2013 through December 2013; (3) January 2014 through February 2014; and (4) September 2014.  Lauziere Decl. Ex. J (Statement of Interest and Liquidated Damages Due).  In total, these are twenty-three months in which TUD paid delinquent contributions.  Subtracting one month in which Plaintiffs apparently waived the liquidated damages charge, Plaintiffs seek a total of $3,300.00 corresponding to twenty-two months of liquidated damages charges.  *Id.*

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs also seek interest for contributions paid late during the above time periods.  The Master Agreement provides for simple interest at a rate of 1.5% per month.  *Id.* Ex. F § 28A.  This interest rate is reasonable.  *See Shade Const.*, 2007 U.S. Dist. LEXIS 103726 at *21–22 (finding that a provision in the master agreement setting interest on late contributions at a rate of 1.5% per month was enforceable).  Plaintiffs' exhibit indicates that interest calculated through May 22, 2015 total $797.07 for the Vacation-Holiday Trust Fund, $2,249.32 for the Pension Trust Fund, $1,791.80 for the Health and Welfare Trust Fund, $120.05 for the Training and Retraining Trust Fund, and $235.20 for the Annuity Trust Fund, for a total of $5,193.44.

The undersigned finds the evidence provided sufficiently supports Plaintiffs' claim, and recommends the District Court grant their request for $3,300.00 in liquidated damages, and $5,193.44 in interest, for a total of $8,493.44.

### 3.  Attorneys' Fees

Plaintiffs are entitled to attorneys' fees under ERISA and the Trust Agreements.  29 U.S.C. § 1132(g)(2)(D); Lauziere Decl. Ex. C, Art. IV § 3 ("If any Individual Employer defaults in the making of Contributions . . . there will be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees [and] costs . . . .").  Plaintiffs request $7,863 in attorneys' fees for a total of 27 hours of work.  Declaration of Edward D. Winchester in Support of Plaintiffs' Motion for Default Judgment ("Winchester Decl.") ¶ 7.  This amount includes the following fees:  (1) $207 for work performed by Ronald Richman, a Senior Shareholder (calculated for 0.6 hours at a rate of $345 per hour); and (2) $7,656 for work performed by Edward D. Winchester, an Associate (calculated for 26.4 hours at a rate of $290 per hour).  *Id.* Ex. B (copy of attorneys' time sheet).

The undersigned finds the requested rates and amounts to be reasonable.  Plaintiffs provided detailed time sheets showing the time and tasks performed by each attorney for which they seek fees.  *Id.*  Courts in this district have, in similar cases, awarded the same hourly rates requested in this case for work performed by both attorneys, Mr. Richman and Mr. Winchester.  *See Bd. of Trs. v. River View Constr.*, No. C-12-03514 PJH (DMR), 2013 U.S. Dist. LEXIS 69316 (N.D. Cal. Apr. 17, 2013) (finding Mr. Winchester's billed rate of $290 per hour was reasonable),

United States District Court
Northern District of California

report and recommendation adopted, No. C 12-3514 PJH, 2013 U.S. Dist. LEXIS 69326 (N.D. Cal. May 15, 2013); *Bd. of Trs. v. A & B Bldg. Maint. Co.*, No. C-13-00731 DMR, 2013 U.S. Dist. LEXIS 149888 (N.D. Cal. Oct. 1, 2013) (finding that Mr. Richman's billed rate of $345 per hour was reasonable), report and recommendation adopted, No. C 13-00731 WHA, 2013 U.S. Dist. LEXIS 149889 (N.D. Cal. Oct. 17, 2013).

Accordingly, the undersigned finds the attorneys' fees reasonable, and recommends the District Court grant Plaintiffs' request for $7,863.

### 4.  Costs

In the Motion, Plaintiffs request costs in the amount of $680, which consists of the following:  (1) $48 for document production; (2) $27 for a messenger service to deliver hard copies of the pleadings to the Court; (3) $400 for the filing fee in this case; and (4) $205 for the cost of personal service.  *See* Winchester Decl. Ex. B.  Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  In addition, the Trust Agreements provide for the recovery of all expenses incurred in the collection of contributions owed.  Therefore, the undersigned recommends that all of the costs requested by Plaintiffs be awarded in full.

### 5.  Audit

Plaintiffs request an injunction ordering TUD to submit to an audit of its records for the period March 2011 through the last completed quarter:

> Individual earnings records; federal tax forms W-3/W-2 and 1069.1099; reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' Compensation insurance; employee time cards; payroll registers/journals; quarterly payroll tax returns (Form 941); check register and supporting cash vouchers; forms 1120, 1040 or partnership tax returns; general ledger; source records, including time cards and time card summaries for all employees; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of defendants' financial records.

Mot. at 12–13.  Plaintiffs have also requested that the Court retain jurisdiction "should the audit disclose additional amounts that may be owed by [TUD] to the Trust Funds."  *Id.* at 13.  The

United States District Court
Northern District of California

1   undersigned recommends the District Court grant these requests because TUD is contractually

2   bound to allow Plaintiffs to conduct an audit of its records.  *See* Lauziere Decl. Ex. C, Art. IV § 7;

3   *see also Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 569

4   (1985) (holding that where a collective bargaining agreement gives the benefit plan the right to

5   audit an employer's books and records, it will be enforced); *Santa Monica Culinary Welfare Fund*

6   *v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990) (holding that a court can compel

7   audit when the trust agreement terms allow for it).  Furthermore, courts in this district have

8   granted requests for audits containing similar language as those requested here.  *See, e.g.*, *Valley*

9   *Concrete*, 2015 U.S. Dist. LEXIS 58976 at *23; *Perez*, 2011 U.S. Dist. LEXIS 142570 at *42–43;

10  *Bd. of Trs. v. Atoll Topui Island, Inc.*, No. C 06-3059 SBA, 2006 U.S. Dist. LEXIS 101026, at

11  *26–27 (N.D. Cal. Dec. 20, 2006).  The undersigned also recommends the District Court retain

12  jurisdiction to ensure payment of any further amounts discovered to be owing during the audit.

13  *See Bd. of Trs. v. Montes Bros. Constr., Inc.*, No. C-14-1324 EMC, 2014 U.S. Dist. LEXIS

14  156659, at *16 (N.D. Cal. Nov. 5, 2014).

15  **IV.    CONCLUSION**

16          For the reasons stated above, the undersigned recommends that the Motion be GRANTED

17  as to Defendant TUD, but DENIED as moot as to Cervantes.  The undersigned recommends the

18  District Court award the following relief:  (1) $40,483.44 for unpaid contributions, interest on

19  those unpaid contributions, and liquidated damages; (2) $8,493.44 for contributions paid, but paid

20  late, and interest on those late contributions; and (3) $8,543.00 for attorneys' fees and costs.  In

21  addition, the undersigned recommends that TUD be ordered to comply with an audit of its

22  business records from March 2011 through the last full quarter.  Finally, the undersigned

23  recommends that the District Court retain jurisdiction over this action.

24  Dated:  September 8, 2015

25

26                                                          JOSEPH C. SPERO
                                                            Chief Magistrate Judge
27

28